UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
: 
FINGER LAKES BOTTLING CO., INC.,                :
:
                              Plaintiff,        :        09 Civ. 6024 (SHS)
:
       -against-                    :        OPINION & ORDER
:
COORS BREWING COMPANY,                          :
:
                              Defendant.       :
:
------------------------------------------------------------------x
SIDNEY H. STEIN, U.S. District Judge.

      Plaintiff Finger Lakes Bottling Co., Inc. brings this action against Coors Brewing Company to enforce an arbitration award pursuant to 9 U.S.C. § 9, and to grant Finger Lakes prejudgment interest pursuant to New York State law. The parties have each moved for summary judgment on the issue of prejudgment interest. For the reasons set forth below, this Court grants Finger Lakes interest on the arbitration award at the Treasury-bill rate from March 21, 2008 until February 25, 2009, and at the statutory rate of nine percent from February 25, 2009 until the entry of judgment in this action.

**I.     BACKGROUND**

      Finger Lakes, a beer wholesaler, is a New York corporation with its principal place of business in New York. Coors, a brewer, is a Colorado corporation with its principal place of business in Colorado. Because the parties are citizens of different states, and more than $75,000 is in controversy, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

      Finger Lakes and Coors were parties to an agreement dated January 8, 2003 ("Distribution Agreement") for Finger Lakes to distribute Molson brand beer in upstate New

1

York.[1]  As part of its plan to consolidate the distribution of its brands, Coors ultimately terminated the Distribution Agreement pursuant to New York State Alcoholic Beverage Control Law section 55-c ("Section 55-c"), N.Y. ALCO. BEV. CONT. LAW § 55-C (McKinney 2000 & Supp. 2010), which governs the termination of distribution "agreements between brewers and beer wholesalers." (Def.'s 56.1 ¶¶ 18, 19; Pl.'s Resp. to Def.'s 56.1 ¶¶ 18, 19.)  On March 11, 2005, Molson—Coors' predecessor to the contract—first sent Finger Lakes written notice that Molson planned to consolidate its distributors in New York and that a test arbitration case was underway to determine the fair market value ("FMV") Molson would pay wholesalers to terminate each distribution agreement pursuant to Section 55-c. (Def.'s 56.1 ¶ 19; Pl.'s Resp. to Def.'s 56.1 ¶ 19.)  On September 19, 2007, Coors gave Finger Lakes further written notice that Molson would be pursuing its consolidation plan against Finger Lakes. (Def.'s 56.1 ¶ 22; Pl.'s Resp. to Def.'s 56.1 ¶ 22.)  Then, on December 7, 2007, Coors notified Finger Lakes that it intended to terminate the Distribution Agreement, effective March 15, 2008. (Def.'s 56.1 ¶¶ 24, 26; Pl.'s Resp. to Def.'s 56.1 ¶¶ 24, 26.)  At this time, Coors offered to pay Finger Lakes an estimate of FMV—based on the award in the test arbitration case—plus any other damages that resulted from termination of the Distribution Agreement. (Def.'s 56.1 ¶ 24; Pl.'s Resp. to Def.'s 56.1 ¶ 24.)

In February 2008, Finger Lakes filed a complaint in the Northern District of New York, seeking 1) a declaration that Coors' intended termination of the Distribution Agreement violated Section 55-c and 2) a permanent injunction preventing its termination.  The court stayed the litigation pending arbitration and denied Finger Lakes injunctive relief.  (Def.'s 56.1 ¶¶ 27-33;

---

[1] The original parties to this Distribution Agreement were Finger Lakes and Molson USA LLC.  After the Distribution Agreement went into effect, Molson merged with Coors and sought to consolidate the distribution of Molson products.  Subsequently, Molson assigned its interest in the Distribution Agreement to Coors. (Pl.'s Local Civil Rule 56.1 Statement of Undisputed Facts ("Pl.'s 56.1") ¶¶ 1, 2; Def.'s Resp. to Pl.'s Local Civil Rule 56.1 Statement of Undisputed Facts ("Def.'s 56.1") ¶¶ 1, 2.)

Pl.'s Resp. to Def.'s 56.1 ¶¶ 27-33; *see also Doldo Bros. and Finger Lakes Bottling Co. v. Coors Brewing Co.*, No. 7:08CV206, 2008 U.S. Dist. LEXIS 17646, at *29 (N.D.N.Y. Mar. 7, 2008).) In that action, Coors also sought leave to deposit with the court pursuant to Fed. R. Civ. P. 67 its estimate of reasonable compensation, but the court denied Coors' motion. (*Id.*)

The Distribution Agreement provides for the binding arbitration of disputes. (Distribution Agreement § 11.2.) On March 20, 2008, Coors commenced an arbitration proceeding against Finger Lakes under the auspices of the American Arbitration Association ("AAA"). (Pl.'s 56.1 ¶ 3; Def.'s 56.1 ¶ 3.) Coors sought a declaration of its right to terminate the Distribution Agreement and of the amount of compensation it owed Finger Lakes. (Arbitration Award ¶ 6.) The following day, Coors sent Finger Lakes a notice of actual termination of the Distribution Agreement. (Pl.'s 56.1 ¶ 5; Def.'s 56.1 ¶ 5.) Along with this letter, Coors—through Wright Wisner Distributing Corp. ("Wright Wisner"), a third party acting on its behalf—tendered Finger Lakes a check for $908,893.87, its good faith estimate of FMV pursuant to Section 55-c. (Pl.'s 56.1 ¶ 6; Def.'s 56.1 ¶ 6.) Finger Lakes did not accept this check, and the parties have never agreed on an amount of reasonable compensation. (Pl.'s 56.1 ¶¶ 7, 10; Def.'s 56.1 ¶¶ 7, 10.)

On August 27, 2008, the parties agreed to limit the scope of arbitration to "the damages to which Finger Lakes is entitled by reason of Coors' termination of their distribution rights, and by further agreement that the compensatory damages payable would be measured by the fair market value of those distribution rights." (Pl.'s 56.1 ¶ 11; Def.'s 56.1 ¶ 11.) Additional briefing took place on the issue of exemplary damages, which the arbitrator subsequently denied. (Def.'s 56.1 ¶¶ 36, 37; Pl.'s Resp. to Def.'s 56.1 ¶¶ 36, 37.) Evidentiary hearings were held in

December 2008.  (Pl.'s 56.1 ¶ 12; Def.'s 56.1 ¶ 12.)   In its post-hearing brief, Finger Lakes specifically requested prejudgment interest.  (Def.'s 56.1 ¶ 39; Pl.'s Resp. to Def.'s 56.1 ¶ 39.)

On February 25, 2009, the arbitrator granted Finger Lakes $1,060,224.  (Award of Arbitrator Joanne Barak dated Feb. 25, 2009 ("Arbitration Award").)  The Arbitration Award stated that "[t]he sole issue in this arbitration is a determination of the fair market value ("FMV") on March 21, 2008, of Finger Lakes' distribution rights which were lost on account of the termination."  (Arbitration Award ¶ 12.)  In a subsequent Disposition of the Application for Clarification of Award, the arbitrator wrote that the subject of prejudgment interest was "beyond the scope of the arbitration and was not considered" and that Finger Lakes' "request to amend the Award to include interest from March 21, 2008, is denied without prejudice to seek interest in any enforcement proceeding."  (Disposition of Application for Clarification of Award, Joanne Barak, dated Mar. 31, 2009 ("Clarification"); *see also* Pl.'s 56.1 ¶ 13; Def.'s 56.1 ¶ 13.)

On April 10, 2009, Wright Wisner tendered Finger Lakes a check for the Arbitration Award amount.  (Pl.'s 56.1 ¶ 14; Def.'s 56.1 ¶ 14.)   One week later, Finger Lakes wrote Coors that it would not accept the check unless Coors stipulated that Fingers Lakes was fully reserving its right to seek prejudgment interest.  Coors did not respond to that letter, and Finger Lakes has never deposited the $1,060,224 check.  (Pl.'s 56.1 ¶¶ 15-16; Def.'s 56.1 ¶¶ 15-16.)

Three months later, Finger Lakes commenced this action, asking the Court to confirm the Arbitration Award and grant prejudgment interest at the statutory rate of nine percent.  Finger Lakes contends that it is entitled as a matter of right to prejudgment interest pursuant to New York C.P.L.R. section 5001 (MCKINNEY 2000), because Coors breached its contract with plaintiff and deprived Finger Lakes of certain property rights.  Finger Lakes argues, in the alternative, that prejudgment interest is appropriate, pursuant to C.P.L.R. section 5002

4

(MCKINNEY 2000), from August 27, 2008, the date the parties agreed that the only issue for arbitration was the fair market value of plaintiff's distribution rights.  Coors contends that no interest is owed, because 1) the arbitrator declined to grant prejudgment interest, 2) Section 55-c does not authorize prejudgment interest, and 3) Finger Lakes has repeatedly refused to accept Coors' offers of payment.  Each side, of course, maintains that the equities tip in its favor.  As noted, Finger Lakes and Coors have now both moved for summary judgment on the issue of prejudgment interest.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate only if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In determining whether a genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).  Nonetheless, the party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" in support of its factual assertions.  *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).  The same standard applies where the parties file cross-motions for summary judgment, and "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir.2001).

### B.   The Arbitration Award is Confirmed

Within one year after an arbitration award is made, "any party to arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected."  9 U.S.C. § 9; *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).  Because neither party contests the award of $1,060,224 to Finger Lakes, the Arbitration Award is confirmed.

C. <u>The Arbitrator Did Not Decide the Issue of Prejudgment Interest</u>

As a preliminary matter, the court must determine whether or not the arbitrator has decided the issue of prejudgment interest.  If the arbitrator had authority to award prejudgment interest and declined to do so, then the court will not do so in an enforcement action.  *See Levin & Glasser, P.C. v. Kenmore Prop., LLC*, 70 A.D.3d 443, 445-46, 896 N.Y.S.2d 311 (1st Dep't 2010) ("Given that arbitrators had authority to award preaward interest and made no such award," the court could not grant preaward interest in confirming the award.); *see also Moran v. Arcano*, 1990 WL 113121, at *2 (S.D.N.Y. July 27, 1990) ("Arbitrators may in their discretion provide for pre-award interest . . . but 'if the award is silent on pre-judgment interest, a court is not entitled to award such interest.'" (quoting *In Re Gruberg*, 143 A.D.2d 39, 39, 531 N.Y.S.2d 557 (1st Dep't 1988))).

Coors points out that not only do the AAA Commercial Rules governing this arbitration allow an award of interest, *see* AAA Comm. R. 43(d)(i), but Finger Lakes brought the issue of prejudgment interest to the arbitrator's attention in both a post-hearing brief and a post-award memorandum.  The arbitrator had ample opportunity to award prejudgment interest, Coors argues, but declined to do so.  In Coors' view, this Court therefore should not do so.

However, the arbitrator's Clarification of March 31, 2009 plainly states that the issue of whether or not to award prejudgment interest was "beyond the scope of the arbitration."

6

(Clarification.) In bringing their dispute to arbitration, Finger Lakes and Coors limited the arbitrator's authority to "the damages to which Finger Lakes is entitled by reason of Coors' termination of their distribution rights." (Pl.'s 56.1 ¶ 14; Def.'s 56.1 ¶ 14.) They also stipulated that compensatory damages would be measured by the fair market value of those distribution rights. The arbitrator therefore specifically denied Finger Lakes' request for prejudgment interest "without prejudice to seek interest in any enforcement proceeding." (*Id.*) After issuing the Arbitration Award, the arbitrator had the authority to clarify that the Award did not include prejudgment interest. *See Play Star, S.A. De C.V. v. Haschel Exp. Corp.*, No. 02 Civ. 7364, 2003 WL 1961625, at *3, n.6 (S.D.N.Y. Apr. 28, 2003); *see also LLT Int'l, Inc. v. MCI Telecomms. Corp.*, 69 F. Supp. 2d 510, 515 (S.D.N.Y. 1999); *Aigen v. Giannone*, 49 A.D.2d 562, 370 N.Y.S.2d 186 (3d Dep't 1975).

Because the issue of prejudgment interest was determined by the arbitrator to be beyond the scope of this particular arbitration and thus not decided by the arbitrator, that issue is properly before this Court.

D.  Pre-Award Prejudgment Interest is Discretionary

New York law governs prejudgment interest here, both because this is a diversity case and because New York law governs the parties' arbitration agreement. *See InterChem Asia 2000 Pte. Ltd. v. Oceana Petrochemicals AG*, 378 F. Supp. 2d 347, 348 (S.D.N.Y. 2005); *Commonwealth Assocs. v. Letsos*, 40 F. Supp. 2d 170, 177 n. 42 (S.D.N.Y. 1999). The issue of prejudgment interest can be divided into two periods: pre-Award prejudgment interest and post-Award prejudgment interest. Finger Lakes contends that an award of prejudgment interest running from a date prior to the date of the Arbitration Award—at the statutory rate of nine

7

percent set by C.P.L.R. section 5004—is mandatory pursuant to either C.P.L.R. section 5001 or 5002.  Section 5001(a) provides that:

> Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

In other words, "[u]nder New York C.P.L.R. § 5001, a creditor is entitled to prejudgment interest on all sums due, as of the date they became due." *Capital Ventures Int'l v. Republic of Argentina*, 552 F.3d 289, 296 (2d Cir. 2009).  While in an action of an equitable nature the court has discretion over what interest to award, in actions for a breach of contract or property loss the statutory rate is mandatory.  C.P.L.R. § 5001(a).

Finger Lakes contends that Coors has owed it money since March 21, 2008, the date Coors terminated the Distribution Agreement allegedly in violation of both the Distribution Agreement itself and Section 55-c of the Alcoholic Beverage Control Law.  The Distribution Agreement explicitly incorporates New York State law, and Section 55-c sets forth the procedures and remedies for terminating an agreement between a brewer and a wholesaler.  Under Section 55-c(7), a brewer who implements a consolidation policy "shall not terminate its relationship with an affected wholesaler *until*" reasonable compensation has been paid.  (Emphasis added.)  Reasonable compensation is defined as "the fair market value of the distribution rights which will be lost or diminished by reason of the implementation of such policy, together with fair and reasonable compensation for other damages sustained."  ALCO. BEV. CONT. LAW § 55-c(7)(a).  If the parties cannot agree on compensation, then—with the consent of both parties—the matter may go to arbitration.  *Id. at* § 55-c(7)(c).  Here, it is undisputed that Finger Lakes and Coors failed to agree on compensation.  Finger Lakes thus

argues that because Coors terminated its relationship with Finger Lakes prior to an arbitration of "reasonable compensation," Coors breached the Distribution Agreement.

Nevertheless, the arbitration itself was not for a breach of contract. Rather, the arbitration was to determine fair market value—the remedy prescribed by Section 55-c, which does not mention prejudgment interest. Finger Lakes never asserted a breach of contract claim in the Northern District of New York litigation or in the subsequent arbitration, and Coors has never been found liable for breach of contract. Accordingly, Finger Lakes is not entitled to nine percent prejudgment interest as a matter of right under a breach of contract theory. *See Garal Wholesalers, Ltd. v. Miller Brewing Co.*, 193 Misc.2d. 630, 643, 751 N.Y.S.2d 679 (S. Ct. N.Y. Co. 2002) ("In New York, the termination procedures for beer distributorships [are] wholly a creature of statute, not contract.").

Similarly, Finger Lakes is not entitled to nine percent prejudgment interest as a matter of right for a deprivation or interference with property. While Coors' actions did in fact deprive Finger Lakes of certain distribution rights, in order to claim prejudgment interest under this prong of section 5001 Finger Lakes must show that the deprivation was unlawful. *See, e.g.*, *Lewis v. S.L. & E., Inc.*, 831 F.2d 37, 39 (2d Cir. 1987); *Manufacturer's & Trader's Trust Co. v. Reliance Ins. Co.*, 8 N.Y.3d 583, 589-90, 838 N.Y.S.2d 806 (2007). Because Coors has not been found liable for any wrongful act, prejudgment interest is not mandatory on Finger Lakes' alleged loss of property.

Finger Lakes' argument pursuant to section 5002 for nine percent interest running from a date prior to the date of the Arbitration Award is also unavailing. Section 5002 provides for the statutory rate of interest from the time of a "verdict, report or decision" until "entry of final judgment." C.P.L.R. § 5002. Under this theory, Finger Lakes seeks prejudgment interest from

9

August 27, 2008—the date the parties agreed to arbitrate only the question of fair market value—thereby purportedly fixing Coors' liability—to February 25, 2009, the date of the Arbitration Award.  However, the parties' agreement to arbitrate fair market value is not a "verdict, report or decision" within the meaning of section 5002.  Finger Lakes' analogy to a bifurcated trial—where time passes between a determination of liability and damages—is misapplied.  The relevant "decision" in this case is the Arbitration Award, not the agreement to arbitrate.  *See In Re Goldberger*, 54 A.D.3d 955, 956, 864 N.Y.S.2d 143, 144 (2d Dep't 2008); *Moran*, 1990 WL 113121 at *3.  Accordingly, neither section 5001 nor section 5002 mandates that Finger Lakes receive the statutory rate of interest from a date prior to the date of the Arbitration Award.

While the court need not grant pre-Award interest pursuant to statute, if this action is of "an equitable nature" the court has discretion to award interest—and to fix the rate and date from which it will be computed.  C.P.L.R. § 5001(a).  Here, the Arbitration Award fixed the fair market value of Finger Lakes' distribution rights.  An award of fair market value is an equitable determination.  *See generally Mathias v. Jacobs*, 238 F. Supp. 2d 556, 576 (S.D.N.Y. 2002) (describing "fair market value" under New York law as "fair, economic, just, and equitable value" (quoting *In re Board of Water Supply*, 277 N.Y. 452, 459, 14 N.E.2d 789, 792 (1938))); *see also Garal*, 193 Misc. 2d. at 646 (Section 55-c "is designed to provide a more equitable framework for the business dealings between beer brewers and importers and their wholesalers." (citing the governor's bill jacket to the 1996 Amendment)); *cf. Levin & Glasser*, 70 A.D.3d at 445 ("[T]he legally significant fact is the absence of a provision in the rules [for fee dispute resolution system] prohibiting, rather than the absence of one authorizing, the award of preaward interest.").  Because the Arbitration Award is of an equitable nature, a court has discretion to grant prejudgment interest.

Naturally, the parties contest the direction that the equities point.  Coors argues that from March 21, 2008—the day it terminated the Distribution Agreement—it offered Finger Lakes reasonable compensation, which Finger Lakes could have accepted and started earning a market rate of interest on.  Indeed, Finger Lakes *could* have deposited the check Coors tendered it in March 2008 upon termination of the Distribution Agreement.  However, doing so would have potentially prejudiced Finger Lakes' ability to seek the full compensation to which plaintiff believes it was entitled pursuant to the Distribution Agreement and Section 55-c.  The Court thus finds that the equities in this case warrant pre-Award interest.

Given that pre-Award interest is appropriate, the question remains: from what date and at what rate?  Here, the Arbitration Award represents the fair market value of Finger Lakes' distribution rights as of March 21, 2008, the date of termination.  However, Finger Lakes did not have access to the amount it was due as of that date, because the Arbitration Award was not issued until a year later.   Finger Lakes should therefore receive interest on the Award from March 21, 2008 until February 25, 2009, the date of the Award.

As for the rate of interest, the Court, in its equitable discretion, adopts a rate equal to the weekly average one-year Treasury-bill rate.  The C.P.L.R. statutory rate of nine percent is neither mandatory, nor in line with actual market conditions for the relevant pre-Award period.[2]  While pre-Award interest is justified, Finger Lakes is not entitled to a windfall, especially in light of the nine percent post-Award prejudgment interest that Finger Lakes will receive pursuant to New York law, as discussed below.  This Court therefore finds that the weekly average one-year

---

[2] The prime rate—which banks use in pricing commercial loans to their most creditworthy customers—and the Treasury-bill rate —which represents the government's short-term cost of borrowing money, as well as a risk-free rate of return—have both been considerably lower than the C.P.L.R. rate since before this action started.  *See Market Data Center*, WALL ST. J., Oct. 15, 2010, http://online.wsj.com/mdc/public/page/2_3020-moneyrate.html; U.S. FED. RESERVE BD. H.15 SELECTED INTEREST RATES, U.S. GOVERNMENT SECURITIES - TREASURY CONSTANT MATURITIES - 1-YEAR.

11

Treasury-bill rate, described in 28 U.S.C. section 1961, is appropriate for the period from March 21, 2008 until judgment is entered pursuant to this Opinion and Order.

    F.  <u>Post-Award Prejudgment Interest is Mandatory</u>

New York law provides for prejudgment interest running from the date of an arbitration award until the entry of final judgment. *See* C.P.L.R. § 5002 ("Interest from verdict, report or decision to judgment"); *Global Reinsurance Corp. of Am. v. Argonaut Ins. Co.*, 634 F. Supp. 2d 342, 351 (S.D.N.Y. 2009) (citing *Capgemini U.S. LLC v. Sorensen*, No. 04 Civ. 7584, 2005 WL 1560482, at * 11 (S.D.N.Y. July 1, 2005)); *see also In re Arbitration Between Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 227 (S.D.N.Y. 2005) ("[A]n arbitration award confirmed under the FAA bears interest from the date of the award until judgment confirming it." (citing *Moran*, 1990 WL 113121, at *2)). Because the Award amount was ascertainable on February 25, 2009, the date the Award was issued, *see Global Reinsurance*, 634 F. Supp. 2d at 351, Finger Lakes should receive interest on that Award from February 25, 2009 until judgment is entered in this action, *see* C.P.L.R. § 5002, at the statutory rate of nine percent, *see* C.P.L.R. § 5004 ("Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute.").[3]

Moreover, the equities here support post-Award prejudgment interest. As noted, Coors refused to stipulate that Finger Lakes' deposit of the Arbitration Award would be without prejudice to its right to seek prejudgment interest. Finger Lakes therefore was not obliged to risk, by accepting Coors' April 2009 tender, that Coors would claim the check was in full satisfaction of the Arbitration Award. Moreover, since Finger Lakes has not yet deposited the

---

[3] Post-judgment interest is calculated pursuant to 28 U.S.C. section 1961(a). *See also FCS Advisors, Inc. v. Fair Finance Co.*, 605 F.3d 144, 148-49 (2d Cir. 2010) (general choice-of-law provision does not alter application of the federal rate to the calculation of post-judgment interest in diversity cases).

12

Arbitration Award, Coors has had the use of $1,060,224 for two and one half years since the termination.

### III. CONCLUSION

This Court confirms the Arbitration Award and grants Finger Lakes interest on the amount of $1,060,224 at the weekly average one-year Treasury-bill rate from March 21, 2008 until February 25, 2009, and at the statutory rate of nine percent from February 25, 2009 until the entry of judgment in this action. The Clerk of Court is directed to enter judgment accordingly.

Dated: New York, New York
October 18, 2010

SO ORDERED:

Sidney H. Stein, U.S.D.J.